UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PAUL STUIT, et al.,<br><br>Defendants. | CASE NO. C11-2139JLR<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

## I.   INTRODUCTION

This matter comes before the court on Defendants Paul Stuit, Robin Burr, and Midland Paper Company's ("Midland") motion to dismiss Counts II and III of Plaintiff International Paper Company's ("IP") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. # 31).) Having considered the submissions of the parties, the balance of the record, and the relevant law, and no party having requested oral argument, the court DENIES Defendants' motion (Dkt. # 31).

ORDER- 1

## II.   BACKGROUND

A.   Facts[1]

IP is a leading producer of printing paper, among other things. (Am. Compl. (Dkt. # 29) ¶ 12.) Xpedx is a division of IP that includes the Strategic Paper Group ("SPG") and specializes in serving the needs of magazine, catalogue, and book publishers. (*Id.* ¶¶ 3-4, 13.) Mr. Stuit was employed by xpedx from April 2005 until his resignation, without notice, on December 14, 2011. (*Id.* ¶ 8.) At the time of his resignation, he was the Vice President of SPG. (*Id.*) Ms. Burr was employed by xpedx from February 2004 until her resignation, without notice, on December 14, 2011. (*Id.* ¶ 9.) Ms. Burr was a Customer Service Representative for SPG. (*Id.*) While working for xpedx, Mr. Stuit and Ms. Burr serviced six accounts, one of which was for an international membership warehouse operator and another of which was for a leading national department store retailer, both based in Seattle. (*Id.* ¶ 33.)

Midland is a direct competitor of xpedx. (*Id.* ¶ 38.) On December 14, 2011, the same day that they resigned from xpedx, Mr. Stuit and Ms. Burr began working for Midland. (*Id.*) Within two days of Mr. Stuit's and Ms. Burr's departure from xpedx and employment with Midland, the membership warehouse operator and the department store retailer informed xpedx that they would be terminating their relationships with xpedx,

---

[1] Because the court must accept all well-pleaded allegations of material fact on a motion to dismiss pursuant to Rule 12(b)(6), *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 662 (9th Cir. 1998), the court sets forth the factual allegations in the amended complaint below as if they are true.

even though they had not yet met the minimum purchase obligation in their contracts with xpedx.  (*Id.* ¶ 53.)

**B.  Procedural History**

On December 21, 2011, IP filed the instant lawsuit against Mr. Stuit, Ms. Burr, and Midland.  (Compl. (Dkt. # 3).)  IP asserts claims for:  (1) breach of contract against Mr. Stuit and Ms. Burr; (2) misappropriation of trade secrets pursuant to RCW chapter 19.108 against Mr. Stuit and Ms. Burr; (3) interference with actual and prospective business relationship with clients and prospects against Mr. Stuit and Ms. Burr; (4) interference with actual and prospective business relations with clients and prospects against Midland; (5) interference with employee confidentiality agreements against Midland; and (6) unfair competition pursuant to the Washington Consumer Protection Act ("CPA"), RCW chapter 19.86, against Mr. Stuit and Ms. Burr.  (Compl. ¶ 1.)

Defendants moved to dismiss IP's complaint (Dkt. # 21), which the court granted in part and denied in part on May 21, 2012 (Order (Dkt. # 28)).  In its order, the court dismissed all of IP's claims except for its misappropriation of trade secrets claim, but granted leave to amend.  (*See generally* Order.)  On June 5, 2012, IP filed an amended complaint that included claims for misappropriation of trade secrets and interference with actual and prospective business relations.  (*See generally* Am. Compl.)  On June 19, 2012, Defendants filed the motion to dismiss that is currently before the court, claiming that IP's amended tortious interference claims suffer from the same defects as the original claims, namely that they are preempted by Washington's Uniform Trade Secrets Act

("the UTSA"), RCW 19.108.010 *et seq.* (*See generally* Mot.)  IP opposes Defendants' motion.  (Resp. (Dkt. # 32).)

### III.   ANALYSIS

**A.  Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, need not accept as true a legal conclusion presented as a factual allegation.  *Ashcroft v. Iqbal*, 556 U.S. 622, 129 S. Ct. 1937, 1949-50 (2009).  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.  Tortious Interference Claims**

The elements of tortious interference with contractual relations or business expectancy are:  (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damages. *Commodore v. Univ. Mech. Contractors, Inc.*, 839 P.2d 314, 322 (Wash. 1992).  "To be improper, interference must be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Moore v. Commercial Aircraft Interiors, LLC*, 278 P.3d 197, 200 (Wash. Ct. App. 2012). Additionally, interference for an "improper purpose" includes interference with an intent to harm. *Thola v. Henschell*, 164 P.3d 524, 530 (Wash. Ct. App. 2007).

Here, IP's amended complaint alleges that Defendants knew of IP's actual and prospective contractual relationships and business expectancies (Am. Compl. ¶¶ 72-74, 80-82), Defendants "wrongfully, improperly and maliciously" interfered with these contractual relationships and business expectancies (*id.* ¶¶ 75-76, 83-84), and Defendants' interference caused IP harm (*id.* ¶¶ 77, 85).  These allegations sufficiently allege that Defendants tortiously interfered with IP's contractual relations and business expectancies.

Defendants nevertheless argue that IP's tortious interference claims are preempted by the UTSA.  (Mot. at 6-9.)  The UTSA "displaces conflicting tort, restitutionary, and other law of [Washington] state pertaining to civil liability for misappropriation of a trade secret."  RCW 19.108.900(1).  The UTSA does not, however, affect contractual or other civil liability or relief that is not based upon misappropriation of a trade secret.  RCW 19.108.900(2)(a).  Washington courts have interpreted these provisions of the UTSA to mean that a plaintiff "may not rely on acts that constitute trade secret misappropriation to support other causes of action."  *Thola*, 164 P.3d at 530 (quoting *Ed Nowogroski Ins., Inc. v. Rucker*, 44 P.2d 1093, 1097 (Wash. Ct. App. 1997), *aff'd*, 971 P.2d 936 (1999)).  A majority of UTSA jurisdictions, including Washington:  (1) assess the facts that support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim; and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim.  *Id.*; *Ultimate Timing, LLC v. Simms*, 715 F. Supp. 2d 1195, 1208 (W.D. Wash. 2008).  "[P]roper application of this three-step analysis precludes duplicate recovery for a single wrong."  *Thola*, 164 P.3d at 530.

In its May 21, 2012 order on Defendants' first motion to dismiss, the court concluded that IP's UTSA claim preempted the tortious interference claims because the "improper purpose" or "improper means" alleged in the complaint was the allegation that Defendants wrongfully used IP's confidential information (alleged to be a trade secret). (Order at 13-14.)  As such, the common law claim was not factually independent from the UTSA claim.  (*Id.*)  In IP's amended complaint, however, there is no allegation that

the fourth element of the tortious interference claim is satisfied by the misappropriation of trade secrets; rather, IP alleges that the fourth element is satisfied by the improper purpose of acting "maliciously," that is, with an intent to harm. (Am. Compl. ¶¶ 75-76, 83-84.) Such an allegation is independent of IP's UTSA claim, and therefore IP's tortious interference claims are not preempted by the UTSA as it is currently pled. If, at some point in the future, it becomes clear that IP is relying on acts that constitute trade secret misappropriation to support its tortious interference claims, Defendants may raise their preemption argument again.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion to dismiss (Dkt. # 31).

Dated this 15th day of August, 2012.

JAMES L. ROBART
United States District Judge